2025 IL App (1st) 231760-U

THIRD DIVISION
June 4, 2025

No. 1-23-1760

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of |
| | ) | Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 11 CR 18876 |
| | ) | |
| DEE FORD, | ) | |
| | ) | Honorable James B. Linn, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE D.B. WALKER delivered the judgment of the court.
Presiding Justice Lampkin and Justice Martin concurred in the judgment.

**ORDER**

¶ 1   *Held:* The trial court did not err in granting the State's motion to dismiss defendant's postconviction petition at the second stage because trial counsel did not render ineffective assistance. Defendant's postconviction counsel provided reasonable assistance. Affirmed.

¶ 2   Defendant Dee Ford appeals from the trial court's dismissal of her petition pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)) at the second stage, arguing that her petition made a substantial showing that her trial counsel was ineffective for failing to consult with her for the time between her arrest (for aggravated battery) and the superseding indictment (for attempted murder), in particular regarding the possibility of pleading

guilty to a lesser offense. In the alternative, she contends that her appointed counsel provided unreasonable assistance because she did not properly amend defendant's affidavit and because appointed counsel had a conflict of interest. We affirm the judgment of the trial court.

¶ 3                                    BACKGROUND

¶ 4      The facts underlying defendant's case were relayed in a prior order of this court. See *People v. Ford*, 2020 IL App (1st) 171097-U. Accordingly, we include below only those facts necessary for resolving defendant's current claims.

¶ 5                                 Prior Proceedings

¶ 6      Defendant was arrested on August 14, 2011, and the State initially charged her by information with multiple counts of aggravated battery under case number 11-CR-13813. On September 16, 2011, the parties appeared for a status hearing. Defendant's trial attorney, Assistant Public Defender (APD) Monique Patterson, stated that she was awaiting medical records and agreed to a continuance date of October 31, 2011. On October 31, 2011, the parties appeared and the State indicated that it was awaiting forensics evidence and "ambulance photos." APD Patterson suggested a continuance to November 28, 2011,which the court granted. On November 16, 2011, however, the State filed a superseding indictment under case number 11-CR-18876, adding two counts of attempted first degree murder.[1] Defendant's arraignment on the new indictment took place on November 28, 2011.

¶ 7      Trial began on September 12, 2012. Immediately before, however, defendant requested a Rule 402 conference. See Ill. S. Ct. R. 402 (eff. July 1, 2012). The trial court then continued the cause for the conference. At the conclusion of the conference, the matter proceeded to trial.

---

[1] The State then nol-prossed the charges in case number 11-CR-13813.

¶ 8 At trial, the evidence established that, during the summer of 2011, the victim, Margolith Rotman, hired defendant to clean Rotman's apartment. On August 11, 2011, while defendant was at Rotman's apartment, defendant asked Rotman for her "PIN number." Rotman said she did not have a PIN or a debit card. Defendant then repeatedly struck Rotman on the head until Rotman lost consciousness. When Rotman regained consciousness, she saw defendant leaving the apartment with a folder containing documents related to Rotman's checking account.

¶ 9 The trial court found defendant guilty on all counts and subsequently merged the aggravated battery convictions into the two attempted murder convictions. The court later sentenced defendant to 14 years' imprisonment on both counts. On direct appeal, the parties agreed to a summary remand to reissue the mittimus to reflect a single conviction for attempted first degree murder. See *People v. Ford*, No. 1-13-0206 (Mar. 18, 2014).

¶ 10                     Defendant's Postconviction Petition

¶ 11 On August 22, 2014, defendant filed her petition for postconviction relief under the Act. Her *pro se* petition claimed, *inter alia*, that she received ineffective assistance of trial counsel. Defendant stated in her petition that her trial counsel did not consult with her from her arrest on August 15, 2011 (for aggravated battery), until January 11, 2012 (when she was reindicted for attempted murder in addition to aggravated battery). On that latter date, defendant's trial counsel met with defendant for 15 minutes without answering any of defendant's questions. According to defendant, counsel admitted that she was " 'negligent' for not pleading out [*sic*] or advising [defendant] to change her plea to guilty" on the aggravated battery before the State amended the charges to include attempted murder.

¶ 12 Defendant supported her petition with her own affidavit. Defendant's affidavit in essence reiterated the same facts from her petition. With respect to the visit on January 11, 2012, she added

that, her trial attorney did not explain to her that she had "the option/ability to change my plea to guilty on the Class 2 felony [*i.e.*, aggravated battery] I was charged with." Defendant further described the January 11 visit as taking place while she was "in the 'bull pen' at [the trial court]," and that her attorney admitted and apologized for her "negligence."

¶ 13    On September 11, 2014, the trial court advanced the petition to second-stage proceedings and appointed counsel to represent defendant. On July 11, 2016, defendant's appointed postconviction counsel, APD Trenis Jackson, filed a Rule 651(c) certificate, captioned under case number "11-CR-1887601-01" without amending or supplementing the petition.

¶ 14    During the hearing on the State's motion to dismiss, the trial court asked APD Jackson whether defendant's trial counsel (APD Patterson) had "anything corroborative" of the ineffective assistance of trial counsel issue raised in defendant's postconviction petition. APD Jackson replied, "I do not," and informed the court that, in multiple conversations, APD Patterson "denie[d] Miss Ford's assertion that [defendant] did not realize that she could have entered into a plea negotiation." In addition, the State observed that, in any event, it would not have entered into any plea negotiations "since there was an indictment pending for the attempt murder."

¶ 15    At the conclusion of arguments, the trial court granted the State's motion to dismiss. On appeal from the dismissal, however, defendant argued, and the State conceded, that the court's dismissal must be reversed because the record showed that APD Jackson failed to fully review the trial record as required by Illinois Supreme Court Rule 651(c) (eff. July 1, 2017). *People v. Ford*, 2020 IL App (1st) 171097-U, ¶ 2   This court agreed, noting that postconviction counsel only reviewed the record in case number 11-CR-18876 (alleging attempted murder and aggravated battery) but not the record in case number 11-CR-13813 (alleging only aggravated battery). *Id.* ¶ 12. As a result, and without considering defendant's remaining claims of error, we reversed

4

the court's order granting the State's motion to dismiss and remanded the cause for further second-stage proceedings in compliance with Rule 651(c). *Id.* ¶ 16.

¶ 16    On remand, the trial court appointed new postconviction counsel, APD Kristine Underwood, on October 6, 2020. On November 9, 2022, APD Underwood filed a new Rule 651(c) certificate as well as a supplemental petition with exhibits. Counsel argued in the supplemental petition that, although the court dismissed defendant's petition based upon its belief that defendant's trial counsel (APD Patterson) had not been appointed until after defendant's reindictment for attempted murder, the court's belief was incorrect. Counsel attached various exhibits to the supplemental petition, including transcripts from various hearings that took place prior to the reindictment purportedly showing APD Patterson having already been appointed. Counsel further attached the online docket sheet allegedly showing that defendant was arraigned (on case number 11-CR-13813) and counsel was appointed on September 12, 2011.[2] Counsel thus concluded that, since APD Patterson had been appointed before the superseding indictment was filed, defendant's claim of ineffective assistance of trial counsel warranted an evidentiary hearing.

¶ 17    On December 5, 2022, the parties appeared at a hearing on defendant's petition. APD Underwood informed the trial court that she was informed "this morning" that APD Patterson had been reassigned within the office and was now APD Underwood's direct supervisor. APD Underwood then stated that her office instructed her to file a motion allowing the entire public defender's office to withdraw as defense counsel. The court denied the motion and stated, "Just work it out with your office to report to somebody else other than Monique." APD Underwood indicated that she suggested the same procedure and would let her office know. She further stated

---

[2] The record also includes an appearance form apparently signed by APD Patterson that is dated September 12, 2011.

that her office might still ask her to file a motion to withdraw, nonetheless. The court noted that defendant had been in custody since 2011 and added that APD Underwood only had to "report to somebody else, pick somebody above Ms. Patterson, and report to that person." The court repeated that APD Underwood could not withdraw.

¶ 18 The court then asked the State for a status update, and the State requested a continuance because it was awaiting transcripts to determine whether the State had ever made a plea offer under the original case number (11-CR-13813). The court continued the matter to January 30, 2023.

¶ 19 On January 12, 2023, APD Underwood filed a motion to withdraw as counsel and to appoint counsel outside of the Office of the Cook County Public Defender. The written motion stated that APD Patterson was assigned to supervise APD Underwood on November 3, 2022. On January 30, 2023, the trial court held a hearing on the motion. At the hearing, APD Underwood again informed the court that her office required that she file the motion. The court denied the motion, stating, "They're not withdrawing for that reason." The court then continued the matter.

¶ 20 On July 20, 2023, the State filed its motion to dismiss, which incorporated its prior motion to dismiss dated November 21, 2016. The State argued that defendant did not show how she was prejudiced by any purported failure on the part of trial counsel to meet with her. The State further argued that defendant failed to show how trial counsel's failure to advise her to plead guilty was objectively unreasonable or that the outcome would have been different.

¶ 21 On August 28, 2023, following a hearing, the trial court granted the State's motion to dismiss. This appeal follows.

¶ 22                                   ANALYSIS

¶ 23 Defendant contends that the trial court's granting of the State's dismissal of her postconviction petition was erroneous. In particular, she argues that she received ineffective

6

assistance of trial counsel because counsel failed to consult with her for the time between her arrest for aggravated battery and the State's superseding indictment that added attempted murder charges. Defendant argues that, as a result, counsel did not inform her that she could plead guilty to what would have been a lesser offense—namely, aggravated battery, instead of the subsequent additional charge of attempted murder. She further contends in the alternative that, her appointed postconviction counsel provided "unreasonable assistance" on two grounds: (1) counsel failed to amend her affidavit to expressly state that, had she been properly advised by trial counsel, defendant would have withdrawn her initial plea of not guilty to the aggravated battery charges before the State subsequently amended the charges to include attempted murder; and (2) counsel had a conflict of interest because her assigned supervisor was the same person against whom defendant had lodged an ineffective assistance of counsel claim.

¶ 24                           Defendant's Postconviction Petition

¶ 25    As noted above, defendant first contends that the trial court erroneously granted the State's motion to dismiss her *pro se* and supplemental postconviction petitions at the second stage of proceedings. She argues that she is entitled to a third-stage evidentiary hearing based upon trial counsel's failure to consult with her prior to the State reindicting her for attempted murder and advise her that she could plead guilty to the preindictment charged offense of aggravated battery.

¶ 26    The Act provides a mechanism for criminal defendants to challenge a conviction on the basis that it violates their state or federal constitutional rights. *People v. Pendleton*, 223 Ill. 2d 458, 471 (2006). Claims under the Act are reviewed in three stages. *People v. Tate*, 2012 IL 112214, ¶ 9. The trial court here dismissed defendant's petition at the second stage of review. At the second stage, the court must accept the defendant's well-pleaded allegations as true and determine whether the petition makes a substantial showing of a constitutional violation. *People*

*v. Domagala*, 2013 IL 113688, ¶ 35.   A defendant makes a substantial showing when she demonstrates she will be entitled to relief if she can prove her allegations at the third-stage evidentiary hearing.  *Id.*  In essence, a third-stage evidentiary hearing is required "only when the allegations of the petition, supported by the trial record and accompanying affidavits, make a substantial showing of a violation of a constitutional right."  *People v. Hobley*, 182 Ill. 2d 404, 428 (1998).   We review the dismissal of a postconviction petition at the second stage *de novo.* *Pendleton*, 223 Ill. 2d at 473.

¶ 27    Defendant contends that she made a substantial showing that her trial counsel rendered ineffective assistance for failure to consult with her between her initial arrest (solely for aggravated battery) and her eventual indictment (for attempted murder and aggravated battery).  Claims of ineffective assistance of counsel are governed by the familiar standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), and adopted by our supreme court in *People v. Albanese*, 104 Ill. 2d 504 (1984).  *People v. Petrenko*, 237 Ill. 2d 490, 496 (2010).  To establish ineffective assistance, a defendant must show both that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the petitioner.  *Id.*  Deficient performance is performance that is objectively unreasonable under prevailing professional norms, and prejudice is found where there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 496-97; *Strickland*, 466 U.S. at 690, 694.  The failure to establish either prong of the *Strickland* test is fatal to the claim.  *People v. Clendenin*, 238 Ill. 2d 302, 317-18 (2010) (citing *Strickland*, 466 U.S. at 697).

¶ 28    The sixth amendment right to the effective assistance of counsel also applies to the plea-bargaining process.  *People v. Hale*, 2013 IL 113140, ¶ 15 (citing *Lafler v. Cooper*, 566 U.S. 156, 162 (2012)).  The two-part *Strickland* test applies to challenges to guilty pleas based on ineffective

assistance of counsel. *Id.* A defendant has a constitutional right to elect what plea to enter (*People v. Phillips*, 217 Ill. 2d 270, 281 (2005)) and to be reasonably informed as to the direct consequences of accepting or rejecting a plea offer (*Hale*, 2013 IL 113140, ¶ 16). To satisfy the second *Strickland* prong (*i.e.*, prejudice), a defendant must not only establish that there is a reasonable probability that, absent her attorney's deficient advice, she would have accepted the plea offer, she "must also demonstrate a reasonable probability that the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it." *Id.* ¶¶ 18-19 (quoting *Missouri v. Frye*, 566 U.S. 134, 147 (2012)). That showing must rely on "independent, objective confirmation that defendant's rejection of the proffered plea was based upon counsel's erroneous advice," rather than other considerations. *Id.* ¶ 18 (quoting *People v. Curry*, 178 Ill. 2d 509, 532 (1997)).

¶ 29 Notably, however, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland,* 466 U.S. at 689. In essence, as this court has previously held, "Effective counsel is not required to be clairvoyant." *People v. Vasser*, 331 Ill. App. 3d 675, 685 (2002).

¶ 30 In this case, taking defendant's allegations as true, defendant did not make a substantial showing that she received ineffective assistance of trial counsel. Defendant claims that trial counsel failed to advise her, *inter alia*, that she could change her plea to guilty regarding the aggravated battery charges before the State reindicted her for attempted murder. At the outset, however, neither defendant's petition nor her affidavit states that she suffered prejudice, *i.e.*, that she would have changed her plea had trial counsel properly advised her to do so. Since defendant's postconviction petition does not meet both prongs of *Strickland*, her ineffective assistance of

counsel claim fails on this basis alone. See *Clendenin*, 238 Ill. 2d at 317-18 (citing *Strickland*, 466 U.S. at 697).

¶ 31　Moreover, the record does not establish that the first prong of *Strickland* has been met, *i.e.*, that trial counsel's performance was objectively unreasonable. There is nothing in the record here to indicate that APD Patterson (defendant's trial attorney) was aware that the State was in the process of seeking an indictment that would add attempted murder charges to the preexisting charges of aggravated battery. It is well established that trial counsel cannot be faulted for lacking an ability to foresee the future. See *Vasser*, 331 Ill. App. 3d at 685. Although defendant states in her affidavit that trial counsel admitted her "negligence" for failing to advise defendant to plead guilty to the State's initial charges of only aggravated battery, that purported admission reflects the distorted effects of hindsight, which may not be considered in evaluating trial counsel's performance. See *Strickland,* 466 U.S. at 689.

¶ 32　Finally, defendant's reliance upon *People v. Williams*, 2016 IL App (4th) 140502, is misplaced. In that case, the defendant was convicted of (1) attempt (first degree murder) (count I), (2) unlawful use of a weapon by a felon (count II), and (3) attempt (armed robbery) (count III). *Id.* ¶ 4. The trial court imposed an aggregate 45-year sentence, comprising consecutive sentences of 30 years on count I and 15 years on count III, and a 5-year concurrent sentence on count II. *Id.* In his postconviction petition, the defendant alleged that his trial counsel explained to him that (1) he could be sentenced for up to 30 years for the attempt (first degree murder) charge, 5 years for the unlawful use of a weapon charge, and 4 to 15 years for the attempt (armed robbery) charge; and (2) he would receive day-for-day sentencing credit for the attempt charges. *Id.* ¶ 6. The defendant further alleged that his trial counsel never informed him that he could be sentenced to consecutive sentences due to his previous criminal record. *Id.* The defendant also contended that

he was prejudiced by counsel's ineffectiveness because, had he known there was a possibility of consecutive sentences requiring him to serve at least 85% of his sentences, he would have accepted the State's 18-year guilty-plea offer instead of choosing to go to trial. *Id.* ¶ 43. The *Williams* court thus reversed the trial court's second-stage dismissal of his petition and remanded for further proceedings. *Id.* ¶ 47. Here, by contrast, there is nothing in the record to establish that the State had offered to enter into a plea agreement with defendant—and with potential additional more serious charges pending before the grand jury, a plea offer seems unlikely. In addition, the record does not indicate that defendant's trial counsel erred in informing defendant as to the possibility of consecutive sentences or the amount of good-conduct credit applicable to the charges against defendant. *Williams* is thus unpersuasive, and we must reject defendant's contention of error.

¶ 33                    Appointed Postconviction Counsel's Assistance

¶ 34    In the alternative, defendant contends that, should this court reject her challenge to the granting of the State's motion to dismiss, her postconviction counsel failed to provide reasonable assistance on two grounds. First, defendant argues that postconviction counsel failed to support defendant's petition by attaching a new affidavit from defendant that would have expressly stated that defendant would have withdrawn her initial plea of not guilty had she been properly advised by trial counsel. Second, defendant argues that postconviction counsel's supervisor was defendant's trial counsel, which resulted in an actual conflict of interest because postconviction counsel was arguing a claim that defendant's trial counsel—*i.e.*, her supervisor—provided ineffective assistance to defendant at trial. Defendant thus asks in the alternative that we remand the matter for the appointment of conflict-free counsel and further second-stage proceedings.

¶ 35    A defendant does not have a constitutional right to the assistance of counsel in postconviction proceedings; rather, the right to appointed counsel at the second stage of

11

postconviction review is a statutory creation. *People v. Johnson*, 2018 IL 122227, ¶ 16. Accordingly, a claim that postconviction counsel's performance was inadequate is not reviewed under the ineffective assistance standard, but the lower reasonable assistance standard. *People v. Custer*, 2019 IL 123339, ¶ 30. Rule 651(c) outlines the steps an attorney must take to provide reasonable assistance, including the requirement to certify her efforts in detail on the record. *Id.* ¶ 32; Ill. S. Ct. R. 651(c) (eff. July 1, 2017). Specifically, the rule requires that postconviction counsel certify that she (1) consulted with the petitioner "to ascertain his or her contentions of deprivation of constitutional rights," (2) examined the record of trial proceedings, and (3) amended the petition as "necessary for an adequate presentation" of the petitioner's claims. *Id.* Illinois courts have repeatedly held that the purpose of Rule 651(c) is to "ensure that counsel shapes the *petitioner's* claims into proper legal form and presents those claims to the court." (Emphasis added.) *People v. Perkins*, 229 Ill. 2d 34, 43-44 (2007) (citing *People v. Pinkonsly*, 207 Ill. 2d 555, 568 (2003)).

¶ 36    "The filing of a Rule 651(c) certificate gives rise to a rebuttable presumption that postconviction counsel provided reasonable assistance." *People v. Profit*, 2012 IL App (1st) 101307, ¶ 19. "It is defendant's burden to overcome this presumption by demonstrating his attorney's failure to substantially comply with the duties mandated by Rule 651(c)." *Id.* We review whether postconviction counsel substantially complied with Rule 651(c) *de novo. People v. Bass*, 2018 IL App (1st) 152650, ¶ 13.

¶ 37    Defendant's first basis for her~~his~~ unreasonable assistance contention is that postconviction counsel failed to supplement her *pro se* postconviction petition with an updated affidavit from defendant that explicitly stated that she would have withdrawn her initial plea of not guilty had

counsel properly advised her. Defendant asserts that postconviction counsel's failure to do so was unreasonable, which entitles her to have her case remanded for further proceedings.

¶ 38    We have already held, however, that defendant failed to make a substantial showing that she met the first prong of *Strickland*, *i.e.*, that trial counsel's performance was objectively unreasonable. Although defendant's petition asserts that trial counsel failed to advise her that she could change her plea prior to the State's seeking additional, more serious, charges, there is nothing in the record to establish that trial counsel knew, during the relevant time period, that the State was in the process of reindicting defendant with additional attempted murder charges. Counsel cannot be considered ineffective because she lacked clairvoyance (see *Vasser*, 331 Ill. App. 3d at 685). Even assuming, *arguendo*, that postconviction counsel were able to obtain an amended affidavit from defendant with an explicit statement claiming prejudice under *Strickland*, this claim would have nonetheless failed because it did not meet the first prong. See *Clendenin*, 238 Ill. 2d 302, 317-18 (2010) (citing *Strickland*, 466 U.S. at 697). Postconviction counsel does not render unreasonable assistance for failure to present a frivolous or patently nonmeritorious claim. See *People v. Greer*, 212 Ill. 2d 192, 205 (2004) ("Fulfillment of the third obligation under Rule 651(c) does not require postconviction counsel to advance frivolous or spurious claims on defendant's behalf."). Under these circumstances, defendant's claim on this point is unavailing.

¶ 39    Moreover, defendant's reliance upon *People v. Perry*, 2017 IL App (1st) 150587, does not alter our holding. There, the defendant was convicted of first degree murder. *Id.* ¶ 2. He subsequently filed a *pro se* successive postconviction petition asserting a claim of actual innocence, attaching an affidavit purportedly from a witness (Hayden), who averred that she falsely identified the defendant at trial as the shooter due to pressure from the police. *Id.* ¶ 11. Postconviction counsel was appointed to assist defendant, and the cause was advanced to the

second stage of proceedings, where the State agreed that the matter should be further advanced to a third-stage hearing. *Id.* ¶¶ 12-13.

¶ 40     At the third-stage hearing, however, postconviction counsel "asked for a date" based upon certain " 'mistakes' " she may have made with respect to Hayden's affidavit. *Id.* ¶ 14.  After counsel moved to withdraw Hayden's affidavit and substitute the defendant's affidavit in which he merely maintained his innocence, the trial court granted the State's motion to dismiss. *Id.* ¶¶ 15, 18. Defendant appealed, arguing that his postconviction counsel rendered unreasonable assistance by withdrawing Hayden's affidavit and "tacitly agreeing" to dismissal of his petition. *Id.* ¶ 1.  We agreed, reversing the dismissal and remanding for further proceedings. *Id.* ¶ 41.  This court noted that postconviction counsel acted, over defendant's objection, to withdraw the Hayden affidavit from defendant's petition and substituted defendant's "self-serving" affidavit. *Id.* ¶ 39.  We recognized that the record revealed "serious questions regarding the reliability of the Hayden affidavit," but nonetheless, "counsel's actions amounted to *an affirmative action that damaged defendant's claims*." (Emphasis added.) *Id.* ¶ 39.

¶ 41     Here, by contrast, defendant's postconviction counsel did not undertake an affirmative action to damage defendant's claims.  She did not withdraw defendant's affidavit; instead, she supplemented the petition.  Furthermore, she did not agree (tacitly or otherwise) to dismissal of defendant's petition; rather, she argued in favor of advancing the cause to a third-stage hearing. Defendant's reliance upon *Perry* is unavailing, and her claim therefore fails.

¶ 42     We now turn to defendant's second claim, which centers on postconviction counsel's alleged conflict of interest.  As noted above, defendant argues that postconviction counsel's immediate supervisor (APD Patterson) was defendant's trial attorney, against whom defendant asserted a claim of ineffective assistance of counsel.  Defendant posits that this resulted in an actual

conflict of interest because postconviction counsel was arguing a claim that her supervisor—*i.e.*, defendant's trial counsel—provided ineffective assistance to defendant at trial. Defendant thus asks that we remand for the appointment of conflict-free counsel and further proceedings.

¶ 43    "The right to reasonable assistance of postconviction counsel includes the correlative right to conflict-free representation." *People v. Hardin*, 217 Ill. 2d 289, 300 (2005). Accordingly, postconviction counsel must be equally conflict-free as trial counsel. *Id.* Illinois recognizes two categories of conflict of interest: *per se* and actual. *People v. Fields*, 2012 IL 112438, ¶ 17. A *per se* conflict of interest exists when specific facts about the defense attorney's status, by themselves, create a disabling conflict. *Id.* Consequently, a *per se* conflict does not require a defendant to establish that counsel's performance was affected by the conflict or show actual prejudice. *People v. Yost*, 2021 IL 126187, ¶ 39.

¶ 44    Where, as here, the defendant is claiming an actual conflict of interest, she must identify an actual conflict that adversely affected her counsel's performance. *Id.* ¶ 38. The defendant is required to "identify a specific deficiency in [her] counsel's strategy, tactics, or decision making that is attributable to the alleged conflict." *Id.* Speculative allegations and conclusory statements are insufficient to establish an actual conflict of interest. *Id.*

¶ 45    This issue concerns an allegation of ineffective assistance of counsel by one assistant public defender against another assistant public defender (who was assigned to be her supervisor). Our supreme court held long ago that public defender's offices are unlike private law firms for purposes of conflicts of interest: "While a conflict of interest among any member of a private law firm will disqualify the entire firm [citation], the disqualification of an assistant public defender will not necessarily disqualify all members of that office [citation]." *People v. Banks*, 121 Ill. 2d 36, 41 (1987). The *Banks* court then held that, where an assistant public defender asserts that another

assistant from the same office has rendered ineffective assistance, a case-by-case inquiry must be conducted to determine whether "any circumstances peculiar to the case indicate the presence of an actual conflict of interest." *Id.* at 44.

¶ 46     We must also briefly discuss our standard of review.  Where the issue of a conflict of interest arises either on appeal or was not brought before the trial court, our review is *de novo*.  See *People v. Sullivan*, 2014 IL App (3d) 120312, ¶ 44.  When, however, a potential conflict is brought to the attention of the trial court "at an early stage, a duty devolves upon the trial court to either appoint separate counsel or to take adequate steps to ascertain whether the risk of conflict was too remote to warrant separate counsel." *People v. Cole*, 2017 IL 120997, ¶ 59.  Under those circumstances, we review the court's action for an abuse of discretion.  *Id.*  A court abuses its discretion only where its ruling is arbitrary, fanciful, or unreasonable, or where no reasonable person would adopt the court's view.  *Blum v. Koster*, 235 Ill. 2d 21, 36 (2009); *Doe v. J.P.J.*, 2024 IL App (1st) 240157, ¶ 27.  Here, postconviction counsel notified the trial court of a potential conflict of interest approximately one month after the conflict arose (*i.e.*, when APD Patterson was assigned to be postconviction counsel's supervisor).  In addition, counsel filed her Rule 651(c) certificate about one week after the conflict arguably arose (again, APD Patterson's assignment). We note, however, that the trial court was apprised of the potential conflict when the proceedings were at a relatively early stage, approximately one month after postconviction counsel's appointment.  We therefore believe that, in the factual context of this case, an abuse of discretion standard of review is appropriate here.  ~~Nonetheless, our holding would be the same even under the less deferential *de novo* standard of review.~~

¶ 47     In this case, although defendant asserts that her postconviction counsel labored under an actual (not *per se*) conflict of interest, we note that the trial court was made aware of the precise

circumstances of the purported conflict. After denying postconviction counsel's motion to withdraw the entire public defender's office, the court then properly found that the risk was too remote to warrant the invalidation of the entire office and suggested that postconviction counsel simply arrange to report to another supervising attorney for this matter. ~~Although~~We recognize that one relevant factor to consider in determining whether a public defender labored under a conflict of interest includes "whether the public defenders [were] in hierarchical positions where one supervised or was supervised by the other" ~~(~~." *Cole*, 2017 IL 120997, ¶ 51~~),~~. In this case, however, defendant ~~here~~ has provided nothing (nor do we see anything in the record before us) to indicate that APD Patterson continued to supervise postconviction counsel (APD Underwood) despite the court's order that she report to another supervisor. Since speculative allegations and conclusory statements do not establish an actual conflict of interest (see *Yost*, 2021 IL 126187, ¶ 38), defendant's claim here fails. See also *Cole*, 2017 IL 120997, ¶ 51 (noting that bare allegations and mere speculation are insufficient to establish an actual conflict of interest).

¶ 48    Nonetheless, defendant asserts that postconviction counsel's failure to "attach necessary documents" in support of her ineffective assistance of trial counsel claim against APD Patterson (postconviction counsel's supervisor) demonstrated the actual conflict of interest. Defendant relies upon *People v. Zirko*, 2021 IL App (1st) 162956, in support of this argument. *Zirko*, however, is factually distinct from this case. There, the court held that the defendant's postconviction counsel had an actual conflict of interest because he was arguing his *own* ineffective assistance at trial: specifically, he failed to attach photographs, which he had in his possession, to the postconviction petition in support of one of the ineffective assistance claims. *Id.* ¶¶ 22-26. Here, by contrast, counsel was not arguing her own ineffectiveness at trial, and she did not have in her possession an updated affidavit from defendant (*i.e.*, the evidence that defendant claims was not attached to her

supplemental postconviction petition) but failed to attach it to the supplemental petition. *Zirko* is thus inapt. Finally, defendant provides no support in the record that the purported failure of postconviction counsel to attach an updated affidavit from defendant was solely due to a conflict of interest or that the public defender's office openly defied a trial court order. Defendant's claim is thus without merit. Accordingly, we must reject both grounds upon which defendant contends that appointed postconviction counsel provided unreasonable assistance.

¶ 49                                          CONCLUSION

¶ 50    The trial court did not err in granting the State's motion to dismiss defendant's postconviction petition at the second stage of proceedings. In addition, defendant's postconviction counsel provided reasonable assistance. Accordingly, we affirm the judgment of the trial court.

¶ 51    Affirmed.